ROBERT  S.  WATSON, Respondent, *v.* ELI  J.  CRANDALL ET AL., Appellants.

### May 20, 1879.

A. is responsible for the consequences of false representations made by him to B. and upon which C. acted to his loss, where it appears that A. intended that they should be communicated to C. and acted upon by him in the manner which occasioned the loss.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

T. C. FLETCHER, R. F. WINGATE, and J. B. BOWMAN, for appellants.

GLOVER & SHEPLEY and E. T. ALLEN, for respondent.

HAYDEN, J., delivered the opinion of the court.

In addition to the facts stated in the opinion delivered in the case of Hornblower against these defendants, it should

here be said that on July 1, 1871, Hornblower received from Crandall eight certificates, of one hundred shares each, representing the stock in the Pioneer Mining and Smelting Company for which the drafts were sent by Hornblower. When Watson, Reed, and Baker purchased, their names were inserted in blanks in certificates corresponding to their respective numbers of shares, and the company was advised accordingly. The referee finds that all of the representations made by Crandall to Hornblower came to the knowledge of the plaintiff Watson, and similarly to the knowledge of Reed and Baker, before their respective purchases of stock, through exhibition of letters or statements of Crandall, or oral communications of their contents, by Hornblower to these several plaintiffs.

On these facts, the appellants insist that, as the present plaintiff and Reed and Baker had no communication with the defendants except as stated, the action, even if it lies between Hornblower and these defendants, does not lie in the present case, or in that of Baker or Reed. In support of this point the appellants rely especially on the cases of *Seizer* v. *Mali*, 32 Barb. 76, and *Peek* v. *Gurney*, L. R. 6 H. L. App. 377.

But, in the first place, the facts of the case at bar clearly distinguish it from both of these cases. As has been stated in the opinion in the case of Hornblower, the correspondence between Crandall and Hornblower shows, not only that the understanding that the shares of stock should be "placed," — that is, disposed of to persons selected by Hornblower, — but that the names of such persons were to be filled in the blank certificates and returned to Crandall as allottees of the shares. This understanding was exactly carried out. Though Hornblower sent the drafts to cover the shares, the certificates were sent to him in blank, and he inserted, as he says, the names of the present plaintiff, of Reed, and of Baker, and of this action he advised the company.

There being such evidence to support the findings of the referee in this respect, the cases of *Seizer* v. *Mali* and *Peek* v. *Gurney, supra,* are not in point. Moreover, it would appear that *Seizer* v. *Mali* is an overruled case. Index of 41 N. Y. 619. See *Cazeaux* v. *Rali*, 25 Barb. 578; *Shotwell* v. *Mali*, 38 Barb. 445; *Bruff* v. *Mali*, 36 N. Y. 200. It is not necessary to discuss the doctrine of *Peek* v. *Gurney*, as, if the authority of that case be admitted, the rule there announced does not conflict with what is here held. The present is not a case of a circular, inviting allottees merely, nor is the attempt to hold persons as directors by those who have purchased shares in the market. There is here evidence tending to prove that the defendants caused these representations to be made and the shares to be delivered to these particular plaintiffs; since Crandall intrusted to Hornblower the task of selecting persons with whose names the certificates might be filled up. Hornblower, as was the understanding, exhibited the letters and disposed of a part of the stock to allottees selected by him. Thus the plaintiff, through the medium of Hornblower, is brought into direct connection with the defendants. Under the evidence this case would come within the second rule stated by the present lord chancellor, Lord Cairns (quoting from Lord Hatherly, then vice-chancellor, in *Barry* v. *Croskey*, 2 John. & H. 23), in *Peek* v. *Gurney, supra*, 413 : " Every man must be held responsible for the consequences of a false representation made by him to another, upon which a third person acts, and so acting, is injured or damnified ; provided it appear that such false representation was made with the intent that it should be acted upon by such third person in the manner that occasions the injury or loss. '' Within this rule the present case, on its facts, comes as directly as the case of *Langridge* v. *Levy*, 2 Mee. & W. 519, decided by Baron Parke, which is instanced in *Barry* v. *Croskey* as an example of the rule ; for here the intent and expecta-

tion of Crandall was, as may be inferred from his letters, that Hornblower should select third persons and communicate the false statements to them.

For the reasons given, and those expressed in the opinion in the case of *Hornblower* v. *Crandall et al.*, the judgment will be affirmed. All the judges concur.